UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHY S. DILLON,

    Plaintiff,

v.                                                                        Case No. 1:19-cv-898
                                                                          Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

# OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her application for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on February 2, 2018, alleging a disability onset date of November 6, 2015.  PageID.36.  Plaintiff identified her disabling conditions as: tarsal tunnel syndrome; status post right ankle fracture ORIF [open reduction and internal fixation]; tinnitus; neurosis with generalized anxiety disorder; depression; post-traumatic stress disorder (PTSD); migraines; multi level severe degenerative disc disease syndrome; and irritable, easily agitated and societal anxiety.  PageID.227. Prior to applying for DIB, plaintiff completed two years of college and had past employment as a security officer, PageID.47. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on April 22, 2019.  PageID.36-48.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

### I.     LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Although the ALJ found that plaintiff was not disabled at the fourth step of the evaluation, she continued to the fifth step. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 6, 2015, and met the insured status requirements of the Social Security Act through June 30, 2017. PageID.38. At

the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of degenerative disc disease with radiculopathy, degenerative joint disease, right ankle fracture status-post ORIF, migraine headaches, and cubital and tarsal tunnel syndrome.  *Id*.  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.40.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently handle. She can occasionally balance, climb ramps/stairs, stoop, kneel, crouch, crawl, and push/pull with the lower extremities. There will be no ladders, ropes or scaffolds, dangerous moving machinery, or exposure to loud noise above level 3.

PageID.41.

The ALJ also found that through the date last insured, plaintiff was capable of performing past relevant work as a security officer.  PageID.47. This work did not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC).  *Id*.

Although the ALJ found that plaintiff was not disabled, she continued to the fifth step where she found that plaintiff could perform a range of light occupations in the national economy.  Specifically, the ALJ found that through the date last insured, plaintiff could perform the requirements of: guard, chief (58,000 skilled jobs); manager, internal security (51,000 skilled jobs); and, guard, security (54,000 semi-skilled jobs). PageID.47-48. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from November 6, 2015 (the alleged onset date) through June 30, 2017 (the date last insured). PageID.48.

4

### III. DISCUSSION

Plaintiff raised four issues on appeal.

**A. The ALJ's RFC finding failed to comply with 20 C.F.R. § 404.1520(c) in addressing the opinions of plaintiff's treating physician and psychologist.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e).

Plaintiff contends that the RFC is flawed because the ALJ failed to properly address the opinions of plaintiff's physicians and psychologists. For claims filed after March 17, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Now, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[1] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

---

[1] The regulations explain "supportability" in the following terms: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

The regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

    1.  **Anthony Melanakos, M.D.**

    The ALJ addressed Dr. Melanakos' opinions as follows:

> The undersigned found the medical opinion from August 2012 by Dr. Anthony Melonakos, the surgeon for the claimant's fracture repair of the right ankle, unpersuasive. Dr. Melonakos proposed permanent disability due to the right foot with corresponding numbness and intermittent pain. Associated limitations included stand/walk 1-3 hours, drive 1-3 hours, overhead work 1-3 hours, lift/carry 1-3 hours, sit 8-12 hours, and other posturals no limitation [sic]. Other limitations were grasping, pinching, fine manipulation and keyboarding at 6-8 hours, pushing/pulling 1-3 hours and foot controls 1-3 hours (Ex. 9F/1/2). However, the doctor did not support his findings with any corresponding medical evidence. His opinion also fell outside the period in question. The larger medical evidence, especially those imaging records showing healed malleolar fractures status-post ORIF (Ex. 1F/2), 5/5 (normal) muscle strength, normal reflexes, and ability for normal ambulation (Ex. 1F/51/53; 3F/554/557) did not support this conclusion. In the upper extremities, there was evidence of normal power in the hands/arms, normal upper extremity sensory/motor function, and periods of no joint pain or swelling (Ex. 3F/556/557/569/571) did not support his conclusions. Further, the claimants stated daily activities (i.e., shopping, chores, walking, driving) were not consistent with the stated limitations.

PageID.46.

    The Court concludes the ALJ properly reviewed Dr. Melanakos' opinion by considering supportability and consistency. In this regard, the ALJ noted that the doctor's opinion (August 2012) fell outside of the relevant time period, predating plaintiff's alleged disability onset date (November 2015) by more than three years. Accordingly, plaintiff's claim of error is denied.

    2.  **Department of Veterans Affairs (VA) Psychologists**

    Plaintiff briefly addresses opinions issued by Michael Ransom, Ph.D. and Steven Pendziszewski, Psy.D. With respect to Dr. Ransom, plaintiff cites an examination conducted on August 14, 2013 (PageID.1938-1940) (Exh, 4F/20-22).[2] Plaintiff states that

> In 2013, Dr. Ransom opined that Ms. Dillon's mental health symptoms would cause occupational or social impairment with occasional decreased work efficiency and an intermittent inability to perform occupational tasks. (PageID.1939-40) Although

---

[2] The Court notes that Dr. Ransom performed an initial evaluation of plaintiff on August 14, 2013, with an "entry date" in the record of October 10, 2013. Plaintiff refers to the evaluation date, while defendant refers to the entry date.

7

> she had not been formally diagnosed with PTSD, her treating psychologist clearly opined her symptoms would impact her ability to consistently sustain work related activity.

Plaintiff's Brief (ECF No. 9, PageID.2386). With respect to Dr. Pendziszewski, plaintiff acknowledged that his opinion would not be considered pursuant to 20 C.F.R. § 404.1520b(c), but contends that the ALJ failed to address the doctor's "multiple findings based on Plaintiff's history." *Id*. at PageID.2386.

Defendant states that the ALJ considered these opinions, pointing out that the ALJ reasonably concluded that the evidence did not support a finding of a severe mental impairment because it was inconsistent with plaintiff's failure to consistently pursue mental health counseling during the relevant period. Defendant's Brief (ECF No. 10, PageID.2403). The ALJ found that for reasons discussed in the opinion, "the claimant's medically determinable mental impairments of depression, anxiety and PTSD, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." PageID.39. In reaching this conclusion, the ALJ reviewed plaintiff's records from before her alleged onset date (including Dr. Ransom's records from 2013 (Exh. 4F/20 *et seq*.)) and more than a year after her date last insured:

> As it relates to the claimant's mental health and associated depression, anxiety and post-traumatic stress disorder (PTSD) during the relevant period, in October 2013, the claimant received a diagnosis for moderate depression and anxiety but was not on prescribed treatment (Ex. 4F/21). Similarly, in December 2013, prior to the AOD, the claimant was diagnosed other specified depressive disorder, other specified trauma-and-stress related disorder, yet she declined mental health treatment (Ex. 1F/134; 3F/134). In January 2014, the claimant's assessed PTSD was reportedly "stable" and her depression was mild in August 2015 (Ex. 1F/66/113; 3F/53). In January 2016, her diagnoses included PTSD, depression, and anxiety. However, the claimant declined mental health follow-up treatment (Ex. 1F/33; 3F/62). In November 2016, the claimant denied any current anxiety symptoms and her depressive symptoms were reportedly mild, although she stated she was willing to follow-up with mental health treatment. She appeared alert, oriented and had intact insight despite a dysthymic mood with tearfulness (Ex.

> 3F/598/600). By December 2016, treatment notes indicated she cancelled mental health appointments and once again declined treatment stating she did not believe psychotherapy would be beneficial (Ex. 3F/587). In May 2017, a PTSD screening was negative. She was alert and attentive in January 2018 (Ex. 3F/471). Ultimately, from the alleged onset date until the date last insured, the claimant declined mental health treatment. She was not on prescribed treatment, involved in individual or group therapy/counseling, and there were no psychiatric hospitalizations or recurrent emergency room visits relating to her mental health. The claimant testified that she relied on "faith" rather than medical treatment.

PageID.45.

> The ALJ further found that:
>
> The fact that she frequently declined mental health treatment suggests her mental symptoms are not severe or limiting. She also testified she could lift/carry up to 40 pounds and she can walk a football field in length, which would not reasonably preclude light exertion work. Although alleged, the record does not support the frequency or duration of her alleged migraine headaches. Her daily activities do not suggest that her memory or focus are more than mildly impaired. The undersigned also considered the claimant's activities of daily living in evaluating her residual functional capacity. Yet [sic] she can drive a car, shop alone in stores, do light chores with breaks, perform personal care tasks, cook and do laundry. All these activities require some degree of movement or mental function, which points to continued abilities to function at a greater degree than alleged.

PageID.46.

Based on the record, the ALJ reasonably concluded that, through the date last insured, plaintiff's mental impairments did not affect her RFC. In addition, defendant points out that Dr. Pendziszewski's evaluation was performed in October 2018, over one year after plaintiff's insured status expired (PageID.2276). Defendant's Brief at PageID.2403. As plaintiff recognized, this evaluation was not relevant. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of DIB expired on June 30, 2017, plaintiff cannot be found disabled unless she can establish that a disability existed on or before that date. *Id.* To the extent that plaintiff contends

9

the doctor's opinion reflects plaintiff's medical history, the ALJ properly relied on plaintiff's contemporaneous medical history of record. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ failed to follow SSR 96-3p when she did not consider plaintiff's affective disorders and PTSD "severe" impairments or consider the effects of plaintiff's mental illness in plaintiff's RFC as required by Social Security Ruling (SSR) 96-8p.

The ALJ did not classify any of plaintiff's mental impairments as "severe impairments" at step two. PageID.39. Nevertheless, the ALJ addressed the impact of plaintiff's alleged mental impairments on her RFC. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servivces*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.*

Here, the ALJ considered both plaintiff's severe and non-severe impairments in evaluating her RFC. As discussed, *supra*, this included plaintiff's mental impairments. PageID.45-46. Where the ALJ considered a claimants severe and non-severe impairments in the remaining steps of the sequential evaluation, the fact that some of the claimant's impairments were not deemed to be severe at step two is legally irrelevant. *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Accordingly, plaintiff's claim of error is denied.

Next, plaintiff raises a number of arguments and claims which she refers to as physical impairments: that she had a long history of ankle and foot pain; that she had a history of

low back pain;  that her migraines constituted a severe impairment; that the ALJ failed to consider the combined effects of her impairments; and that the ALJ's RFC finding is not supported by substantial evidence because she could not perform light work or even sedentary work prior to her date last insured.  Plaintiff's Brief at PageID.2391-2394.  Plaintiff did not identify these claims in the Statement of Errors.  *See* Notice (ECF No. 7) ("Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue.").

Even if these issues were not waived, the claims would be denied.  The ALJ performed a comprehensive review and evaluation of plaintiff's alleged disabling impairments.  The ALJ: considered plaintiff's ankle and foot problems (PageID.42-43); considered plaintiff's complaints of chronic low back pain and associated problems with walking, standing, or lifting (PageID.44); considered the effects of plaintiff's migraine headaches (PageID.44); considered plaintiff's alleged joint pain in the hands and feet (PageID.44-45); and concluded that the medical evidence supported the finding that plaintiff had the RFC to perform light work (PageID.45).  The ALJ's conclusions are supported by substantial evidence in the record.  The fact that some evidence in the record could have supported a different conclusion does not undermine the ALJ's decision.  *See Willbanks*, 847 F.2d at 303.

> **C. The post-date last insured (DLI) evidence of plaintiff's mental impairments should have been considered and given weight by the ALJ that evidence pertained to her ongoing condition.**

As discussed, the ALJ addressed and considered evidence of plaintiff's mental impairments before her alleged onset date, during the relevant time period, and after her date last insured.  Accordingly, this claim of error is denied.[3]

---

[3] The Court notes that plaintiff's brief does not have a corresponding argument section for this statement of error.  Her arguments appear at different locations within the brief.

11

### D. The ALJ failed to properly assess all the evidence or evaluate plaintiff's symptoms as required by SSR 16-3p and 20 C.F.R. § 404.1529(c)(3).

Plaintiff contends that in evaluating her symptoms, the ALJ failed to consider factors not limited to the character and location of symptoms, change over time, medications and daily activities. In SSR 16-3p, the agency stated that, "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p, 2017 WL 5180304 at *2 (Oct. 25, 2017). The agency explained that, "our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" *Id*. at *10.

It is well established that evaluation of a claimant's subjective complaints remains peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). In *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), the Sixth Circuit stated that courts must give deference to the ALJ as the finder of fact, and that the court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." While the term "credibility" is no longer used, this Court must still give deference to the ALJ's evaluation of the symptoms under the regulations. "[A]side from this linguistic clarification, the analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Scobey v. Commissioner of Social Security*, No. 1:17-cv-987, 2018 WL 4658816 at *11 (W.D. Mich. Sept. 28, 2018) (internal quotation marks and brackets omitted).

Plaintiff contends that the ALJ's decision is "essentially void of any meaningful discussion of [p]laintiff's symptoms and the factors required by 20 C.F.R. § 404.1529(c)(3). Plaintiff's Brief at Page ID.2395. The regulation provides in pertinent part that:

> Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c).

Plaintiff raises two points: her migraine headaches and foot pain. With respect to the migraine headaches, plaintiff contends that the ALJ's reasoning is "unclear at best." Plaintiff's Brief at PageID.2395. Plaintiff does not explain how that ALJ failed to consider the factors listed in § 404.1529(c).

With respect to the foot pain, plaintiff points out that she had bilateral foot pain that was aggravated by walking and weather after she tried to work a part-time job, followed by a string of citations to the record. *Id*. Plaintiff contends that the ALJ's assessment did not address the ineffectiveness of medications for that pain, recurrent treatment, and multiple rounds of physical therapy. *Id*. The ALJ addressed plaintiff's relevant medical history with respect to her ankle problems, foot problems, low back pain, leg pain, joint pain in the feet, and problems walking at length. PageID.42-46. The ALJ properly evaluated plaintiff's conditions as required by the regulations. Accordingly, plaintiff's claim of error is denied.

**IV.     CONCLUSION**

Accordingly, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.


Dated: March 22, 2021                                          /s/ Ray Kent
                                                               RAY KENT
                                                               United States Magistrate Judge